ROSE CLARK v. MARGARET McATEE and
RUFUS McATEE, Appellants.

**Division One,  December 6,  1913.**

**EJECTMENT:  Evidence.**  Evidence  in  ejectment  for  city  lots
*held*  insufficient  to  support  a  judgment  for  the  plaintiff.

Appeal from Knox Circuit Court.—*Hon. Charles D.
Stewart,* Judge.

REVERSED.

*Frisby H. McCullough* for appellants.

*O. D. Jones* and *James C. Dorian* for respondent.

BLAIR,  C.—This  is  an  action  in  ejectment.
The  dispute  concerns  the  boundary  line  between
certain  lots  in  the  city  of  Edina.  The
Ejectment:  case  has  been  here  before  [227  Mo.  152.]
Evidence.  As  on  the  former  trial,  the  judgment
was  for  plaintiff,  and  defendants  appeal.

The  only  plat  of  a  survey  in  the  record  is  called
the  "Robinson  Survey,"  was  offered  by  plaintiff  and
shows  the  southwest  corner  of  the  original  town  of
Edina  is  also  the  southwest  corner  of  section  18,  town-
ship  62,  range  11.  The  Robinson  Survey  shows  16
blocks.  Block  1  is  the  southwest  block  in  the  plat.
Blocks  2,  3  and  4  lie,  in  order,  north  of  block  1  and  be-
tween  1  and  2,  2  and  3  and  3  and  4  are  streets  plat-
ted  as  sixty-six  feet  wide.

The  length  of  the  west  line  of  each  of  blocks  1,
3  and  4  is  platted  as  four  chains.  That  of  block  2  is
platted  as  4.02  chains.  Clay  street  runs  between  blocks
1  and  2;  Jackson,  between  blocks  2  and  3;  Smallwood,
between  blocks  3  and  4;  and  Marion  street  runs  north
of  block  4  and  has  a  platted  width,  at  the  northwest
corner  of  that  block,  of  fifty-five  feet.

Survey No. 77, which played such an important part in the former trial and the former hearing in court, was again relied upon by respondent, though not offered in evidence as an official survey.

The surveyor who made it testified he was following the Robinson Survey, that he began at the southwest corner of section 18-62-11 at the "nigger head rock" which has been immortalized by this litigation. As on the former trial, it appears there is no plat or field notes calling for this rock, but the surveyor above mentioned had previously used it in other surveys.

He testified he verified its location at the southwest corner of section 18-62-11 by running south 111 links to a limestone rock, there being a call in "the field notes," supposedly those of the survey of section 18, for a limestone rock 111 links south of the southwest corner of that section. To this part of his testimony and that concerning other marks, corners, buildings, etc., further reference will be made in the course of the opinion.

The surveyor also testified that the actual, measured distance from the southwest corner of the section and original town to the northwest corner of the inclosure on block 3, as shown by survey No. 77, is 925.58 feet, and that this distance corresponds exactly with that called for by the Robinson Survey; that the actual distance from the northwest corner of block 3 north across Smallwood street to the southwest corner of block 4, as inclosed, is 74 1-3 feet; and that the actual length of the west line of block 4, as inclosed, is 251 1-3 feet.

As platted, block 4 is divided into two equal parts by an alley running north and south through its center. Both the east and west halves of the block, as thus divided, are divided into five lots—lots 1 to 5, inclusive, lying in the west half and fronting west on First street, and lots 6 to 10, inclusive, lying in the

east half and fronting east on Second street.  Lot 1 is the southern lot in the west half, and 2, 3, 4 and 5 lie north of it, in order.  Lot 6 is the southern lot in the east half, and 7, 8, 9 and 10 lie north of it, in order. Each of these lots has a platted frontage of 52 4-5 feet, and of these respondent owns lots 4, 5, 8, 9 and 10 and appellants own lots 1, 2, 3, 6 and 7.  The lines in controversy are those between lots 3 and 4 and lots 7 and 8.

The surveyor mentioned testified that his measurements disclosed that the true line between lots 3 and 4 was "about eight feet" south of appellants' fence, and the line between lots 7 and 8 was "about ten or twelve feet" south of appellants' fence.  It may be noted here that the platted distance from the southeast corner of block 1 to the northeast corner of block 4 is 3.3 feet greater than the platted distance from the southwest corner of block 1 to the northwest corner of block 4.

This surveyor also testified that respondent's north fence was some twelve feet north of what he fixed as the true north line of block 4 and of lot 5 of that block.  He did not measure to the north boundary of the original town, as shown by the plat, nor did he make any measurements of the actual occupancies of respondent and appellants.

For appellants there was in evidence actual measurements of the inclosures of respondent and appellants.  One witness who made measurements testified, and the plat made by him disclosed, that the west line of block 4, as inclosed, is 253½ feet; and the east line 259 feet; that appellants' frontage on the west side of the block is 149 feet and respondent's frontage on the west side is 104½ feet.  Appellants' frontage on the east side is 105 feet and respondent's frontage on the east 154 feet.

Respondent's case depends absolutely upon the testimony of the witness who surveyed the property

for her and made survey No. 77.   In making this survey this witness testified that his purpose was to follow the calls in the Robinson Survey, accepting it as accurate.   The questions are whether he used the correct beginning point as called for by that survey; and, if so, whether he accurately followed the calls of that survey for courses and distances.

Let it be conceded that the beginning point he selected was the right one, yet the record demonstrates the inaccuracy of his subsequent proceedings.   His testimony and measurements show that the distance from the beginning point to the northwest corner *of the inclosure* in block 3 is 925.58 feet. ˙ This, he testified, is the distance between the beginning point and the northwest corner of block 3, as platted.   The slight error apparent in this measurement is negligible.   His survey shows the distance from the northwest corner of block 3, as inclosed, across the street to the southwest corner of block 4, as inclosed by appellants' fence, to be 74 1-3 feet.   It also shows that 'the length of the west line of the inclosures of respondent and appellants in block 4 is 251 1-3 feet.   He testified respondent's north fence, which should have been placed along the true north line of lot 5, block 4, is *twelve feet north* of the true line.   He also testified that the fence which divides the occupancies of respondent and appellants in the west half of block 4 is about eight feet north of the true line between lot 3, owned by appellants, and lot 4, owned by respondent.

The northwest corner of block 3, as platted in the Robinson Survey and as marked by the inclosures now on block 3 being identical, according to the surveyor upon whose testimony respondent's case depends, the distance between the beginning point and the northwest corner of block 3 must be accepted as the basis of measurements to the north.   The northwest corner of the inclosure in block 3, the error of 4.32 inches being negligible for the purpose of the argument, may

be accepted as fixed and will be designated as "A." From this point to the southwest corner of appellants' inclosure on block 4 is 74 1-3 feet. From this last mentioned point to the northwest corner of respondent's inclosure is, according to respondent's evidence, 251 1-3 feet. The sum of these distances is 325 2-3 feet. The platted distance from "A" to the northwest corner of block 4, as platted, is 330 feet. This distance is made up of the distance across the street, as platted, north from "A" sixty-six feet and the length of the west side of block 4, which is platted as 264 feet. The fence on the north side of the respondent's inclosure in the west half of block 4 is, therefore, 4 1-3 feet *south* of the true line, as platted.

How the witness arrived at the conclusion that respondent's fence is twelve feet too far north is inexplicable when the measurements upon which the entire probative force of his testimony depends demonstrate it is 4 1-3 feet too far south.

There is another method of arriving at the same result. Each lot is 52 4-5 feet wide according to the plat. Commencing at "A" and adding to the platted width of the street (66 feet), immediately north, the platted width of lots 1, 2 and 3 owned by appellants, the result is the distance from "A" to the true north line of lot 3 and is 224.4 feet. If appellants' fence is on their true line, respondent would have had left, actually inclosed, but 101 4-15 feet front and would have lacked 4 1-3 feet of having inclosed, on the north, all to which she is entitled.

If the measurements given by the witness are correct, it is not possible to accept as possessing any probative force his mere conclusion that appellants' lines are "about eight feet" and "about ten or twelve feet" too far north.

If his measurements are incorrect, or if he started from the wrong beginning point, of course his survey

and his testimony fall and respondent's case falls with it.

It may be added that it clearly appears that respondent has in possession a larger proportion of the block than have appellants; that the "nigger head rock" is conclusively shown to have reached its present position by reason of the fact that it was ploughed up in the street and placed there solely to get it out of the way of those working in the street. The limestone rock called for by the field notes as being 111 links south of the southwest corner of section 18 was undoubtedly under "Fisher's sidewalk," while the limestone rock found by respondent's surveyor when he measured south 111 links from the "nigger head rock" was in a ditch and under no sidewalk. To accept the conclusion upon which respondent's case depends would, according to the surveyor, change every street in Edina save one. The Winterbottom building, a three-story building erected in the fifties, is relied upon as evidence of the correspondence between the present location of the "nigger head rock" and the southwest corner of section 18. There is no satisfactory evidence that this building was erected on any lot line, though the surveyor who testified for respondent said he had used its location on the theory it had been erected on the south boundary of one of the south lots of the original town. The fact that the same witness testified that he had run a line north from the "nigger head rock" and struck the corner stone in the west line of the section is of no value since he gave no distance for the line thus measured, and without the distance between the two the corner stone mentioned is valueless as an indication whether in commencing at the "nigger head rock" the witness commenced too far north or too far south.

In view, however, of the fact that the measurements given by the witness demonstrate that he was wrong and that appellants are not in possession of any

of respondent's ground, and in view of the fact that it is upon this witness respondent's whole case depends, the evidence concerning the position of the "nigger head rock" becomes of little importance.

The judgment is reversed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All of the judges concur.